Michael B. Reynolds (#174534)
Jasmin Yang (#255254)
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626
Telephone: (714) 427-7000
Facsimile: (714) 427-7799
E-mail: mreynolds@swlaw.com
          jyang@swlaw.com

Attorneys for TREIF USA Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>CAL PREMIUM TREATS,<br><br>Debtor. | CASE NO.: 6:16-bk-17522-SC<br><br>CHAPTER 11<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY**<br><br>Date: May 2, 2017<br>Time: 1:30 p.m.<br>Location: Video Courtroom 126<br>            3420 Twelfth Street<br>            Riverside, CA 92701<br><br>Petition filed: August 22, 2016 |

TREIF USA Inc. ("TREIF") by and through undersigned counsel, submits the following Memorandum of Points and Authorities in support of its *Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362(d)* (the "Motion"). The property at issue is an industrial portion cutting machine known as the Puma Portion Cutter with Conveyor (the "Cutting Machine").

Relief from stay is appropriate under 11 U.S.C. § 362(d)(1) for cause because, pursuant to TREIF's Sale Agreement, TREIF owns the Cutting Machine, not the Debtor.

In the alternative, in the event the Court finds that, notwithstanding the language of TREIF's Sale Agreement, it constitutes a security agreement instead of an outright sale, relief from stay is appropriate under 11 U.S.C. § 362(d)(1) and (d)(2) because the Property is not adequately protected, there is no equity in the Cutting Machine, the Debtor has not made any post-petition payments or adequate protection payments, and there is no effective reorganization in sight.

In the unlikely event the Court finds that the Sale Agreement constitutes a lease instead of a security agreement, then the Debtor's continued possession of the Cutting Machine must be conditioned upon the Debtor's payment of post-petition rent and adequate assurance of future performance under 11 U.S.C.§ 365.

TREIF requests that the Court grant it relief from stay so that it may proceed with obtaining possession of the Cutting Machine in accordance with non-bankruptcy law.

## I. FACTUAL BACKGROUND

TREIF is in the business manufacturing and selling commercial food cutting machines that are used throughout the food processing industry.[1] On or about June 5, 2015, Cal Premium Treats (the "Debtor") placed an order for a TREIF Puma FB Portion Cutting Machine (the "Cutting Machine"). In connection with this order, John Keller, on behalf of the Debtor, executed that certain Order Confirmation which is subject to TREIF's General Terms and Conditions for Delivery and Supply (the Order Confirmation and Terms and Conditions are hereinafter collectively referred to as the "Sale Agreement").[2] The Order Confirmation provides in relevant part: "The PUMA FB is property of TRIEF USA, Inc. until the machine is paid in full." Accordingly, under the Sale Agreement, unless and until the Debtor makes all of the installment payments, TREIF owns the Cutting Machine, not the Debtor. However, Section 5.1 of the Terms and Conditions provides that the Debtor granted TREIF a first priority security interest in

---

[1] Declaration of Alicia Kidd ("Kidd Decl.) ¶ 1.
[2] Kidd Decl., ¶ 3.

- 2 -

the Cutting Machine following delivery and that this security interest shall remain in force until payment in full of the entire purchase price.

In June 2015, TREIF shipped the Cutting Machine to the Debtor at 20343 Harvill Avenue, Perris, California 92570.[3]

Despite repeated demand, the Debtor refused to pay the amounts owed under the Sale Agreement.[4] The Debtor has not made any payments to TREIF since May 2016.[5]

The amount owed by the Debtor to TREIF is no less than $46,277.22, calculated as follows:

|  |  |
|---|---|
| Principal: | $38,239.60[6] |
| Interest: | $ 5,867.95[7] |
| Total: | $46,277.22[8] |

In contrast, the value of the Cutting Machine, given its age and condition, is $26,000.[9]

The Debtor has listed two TREIF portion cutters in its Schedule B, but has valued them at $0.00.[10] The Debtor has not listed any agreement relating to the Cutting Machine on its Schedule G of Executory Contracts or Leases. The Debtor has listed TREIF on its Schedule F of unsecured creditors with a disputed, contingent, and unliquidated claim in the amount of $41,142.00.

---

[3] Kidd Decl., ¶ 5.
[4] Kidd Decl., ¶ 6.
[5] *Id.*
[6] Takes into account the only payments the Debtor has made which were: (1) 6/9/15 in the amount of $885.00; (2) 1/12/16 in the amount of $1,000.00; (3) 2/12/16 in the amount of $2,000.00; and 5/3/16 in the amount of $1,000.00.
[7] Per Section 3.3 of the Sales Agreement, interest accrues on unpaid amounts at 1.5%/month at a per diem amount of $18.86/day.
[8] Kidd Decl. ¶ 7.,
[9] Declaration of Guenter Becker, ¶ 5.
[10] *See* docket entry no. 14. Oddly, the Debtor has listed the value of the property on Part 8 of Schedule A/B as $0.00 although there are two TREIF portion cutters listed on the Debtor's equipment list with collective budget amount of $112,400.00. This Motion only concerns one of the items of TREIF equipment, the Cutting Machine.

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

## II. LEGAL ARGUMENT

### A. There Is Sufficient "Cause" under 11 U.S.C. Section 362(d)(1) to Grant Relief From The Automatic Stay.

Pursuant to 11 U.S.C. Section 362(d)(1), a party-in-interest may be granted relief from the automatic stay for cause. The term "cause" is not defined in the Bankruptcy Code and must be determined on a case by case basis. *Christianson v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citations omitted); see also *In re Delaney-Morin*, 304 B.R. 365, 369 (9th Cir. B.A.P. 2003). The Bankruptcy Code specifically identifies lack of adequate protection as cause for relief from the automatic stay, and the Debtor has the burden to prove that the movant's interest in the property at issue is adequately protected. *Sun Valley Ranches, Inc. v. Equitable Life Assurance Society of the United States (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1375 (9th Cir. 1987) (citations omitted). In fact, regardless of the type of "cause" asserted by the moving party, the debtor has the burden of showing that there is no such "cause" to terminate the automatic stay. *In re Ellis*, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985).

#### 1. "Cause" Exists for Relief from Stay Because the Debtor Does Not Own the Cutting Machine.

Pursuant to the Order Confirmation, title does not pass to the Debtor unless and until it makes all payments required under the Sale Agreement. Under the plain language of the Sale Agreement, the Debtor does not even own the Cutting Machine as it has not made the required payments. Thus, the Debtor's lack of ownership of the Cutting Machine is cause alone for relief from stay.

#### 2. To the Extent the Court Interprets the Sale Agreement as a Security Agreement, Cause Exists for Failure to Make Post-Petition Payments.

Notwithstanding the plain language of the Sale Agreement, the Uniform Commercial Code can be read to provide that the seller in a retail installment contract retain a security interest in goods shipped to the purchaser. California Commercial Code Section 2-401(1) provides in part:

- 4 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR RELIEF FROM STAY

4847-0234-3236

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

> Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of this division on secured transactions (Division 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

In addition, Paragraph 5.1 of the Terms and Conditions grant TREIF a purchase money security interest in the Cutting Machine to secure the Debtor's payment of the purchase price. To the extent the Court interprets the Sale Agreement in this manner, then TREIF is a secured creditor and has a security interest in the Cutting Machine. Relief from stay is still appropriate in this instance because the Debtor has not made any post-petition payments to TREIF and, in fact, has not made any payments to TREIF since May 2016. A debtor's failure to make regular post-petition payments to its secured creditor constitutes "cause" under 11 U.S.C. § 362(d)(1). *See In re Delaney-Morin*, 304 B.R. at 370 n. 3; *In re Epic Capital Corp.*, 290 B.R. 514, 526 (Bankr. D.Del. 2003)("[i]t is well-established that a creditor can meet its initial burden of evidence production on the issue of 'cause' under § 362(d)(1) by introducing evidence of the debtor's failure to make post-petition installment payments on a secured debt."); *In re Watson*, 286 B.R. 594, 604 (Bankr. D.N.J. 2002)("The debtor's failure to make post-petition payments is sufficient cause to justify granting relief from the automatic stay."); *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y. 1994)("the creditor can often establish its *prima facie* case by demonstrating that the debtor has completely failed, or has substantially failed, to make post-petition payments").

Here, the Debtor has completely failed to make any payments to TREIF since May 2016, and the Debtor has not even offered to make payments to TREIF. Most disturbing to TREIF is that there is no indication that the Debtor will be able to generate <u>any</u> cash flow from which to make payments to TREIF. Because the likelihood of the Debtor ever being able to make such payments is speculative at best, relief from the automatic stay is appropriate.

### 3. TREIF Is Not Adequately Protected.

11 U.S.C. Section 362(d)(1) specifically lists lack of adequate protection as an example of "cause" entitling creditors to relief from stay. Adequate protection payments are required to safeguard a creditor against the depreciation of its collateral during the bankruptcy process. *Leasing Corp. v. Deico Electronics, Inc.*, 139 B.R. 945 (9th Cir. B.A.P. 1992.) If the value of the collateral decreases, that creditor is entitled to cash payments so that the value of its interest in the collateral remains constant. 11 U.S.C. § 362(d)(1) and 361(1). *See also In re Addison Prop. LTD P'ship* 185 B.R. 766 (Bankr. N.D. Il. 1995). The amount by which the collateral depreciates is the amount of adequate protection to which the secured creditor is entitled. *Leasing Corp. v. Deico Electronics, Inc.*, 139 B.R. at 947.

The value of the Cutting Machine is declining during the pendency of this bankruptcy. The Debtor has been using the Cutting Machine in its business and the use and wear and tear has depreciated the value of the Cutting Machine. The value of the Cutting Machine continues to depreciate as long as the Debtor continues to use it in the course of its operations due to wear and tear, deferred maintenance and risk of damage.[11]

The Debtor's use of the Cutting Machine it to additional wear and tear, maintenance, and risk of damage. In light of the Debtor's failure to make payments, delinquent monthly operating reports, and failure to obtain proof of insurance (only remedied after the U.S. Trustee filed a motion to dismiss), it is highly unlikely that the Debtor is capable of maintaining the Cutting Machine in a manner that is sufficient to prevent a decline in value. Pursuant to 11 U.S.C. Section 362(g)(2), the Debtor has the burden of proving that TREIF is adequately protected despite the fact that the Cutting Machine is depreciating while the Debtor makes no payments.

---

[11] Conversely, if the Cutting Machine is not being used and thereby subjected to accelerated depreciation, then clearly it is not necessary to the Debtor's business operations and there are no grounds to prevent TREIF from obtaining it under Code Section 362(d)(2) as discussed below.

- 6 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR RELIEF FROM STAY

4847-0234-3236

**B.    Termination of The Stay Is Appropriate under 11 U.S.C. Section 362(d)(2) Because There Is No Equity in TREIF's Collateral and The Debtor Cannot Demonstrate A Reasonable Likelihood of Reorganization.**

Pursuant to 11 U.S.C. Section 362(d)(2), a party in interest may be granted relief from the automatic stay if: (i) the Debtor does not have equity in the property; and (ii) the property is not necessary for an effective reorganization.  Once the movant establishes that there is no equity in the collateral "it is the burden of the Debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'"  *United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 44 U.S. 365, 375-376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citation omitted).  "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization **that is in prospect**."  *Id*. (emphasis added)  Furthermore, there must be "a reasonable possibility of successful reorganization within a reasonable time."  *Id*. (citations omitted).

A "reasonable probability" of reorganization cannot be grounded solely on speculation, however, and a mere "financial pipe dream" is insufficient to meet the requirements of Section 362(d)(2).  *In re L&M Properties, Inc.*, 102 B.R. 481, 484 (Bankr.E.D. Va. 1989).  At a minimum, the Debtor must provide the Court with a broad outline of how it intends to employ the rehabilitative mechanisms of the Code to effectuate a reorganization within a reasonable time period.  *Id*.  Finally, to determine that there can be an effective reorganization of the Debtor's business, the Debtor must persuade the Court that the operations of the Debtor's business will generate sufficient income to pay debt service.  *Id*. at 485.

1.    30Underline{The Debtor Lacks Equity in The Cutting Machine}.

The Debtor owes TREIF at least $46,277.22.  In contrast, the value of the Cutting Machine, in its depreciating state is $26,000.00  The Debtor's Schedule B indicates the value of the Cutting Machine is $0.00.  Pursuant to 11 U.S.C. Section 362(g)(1), TREIF has met its burden to demonstrate the Debtor's lack of equity in the Collateral.

- 7 -

### 2. The Debtor Cannot Demonstrate A Reasonable Probability of Reorganization.

Once the movant establishes that there is no equity in the collateral "it is the burden of the Debtor to establish that the collateral at issue is 'necessary to an effective reorganization.'" Timbers, 44 U.S. 365, 375-376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citation omitted). "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization **that is in prospect**." *Id*. (emphasis added) Furthermore, there must be "a reasonable possibility of successful reorganization within a reasonable time." *Id*. (citations omitted).

Because TREIF has met its burden under Section 362(d)(2)(A), the burden shifts to the Debtor to demonstrate that there is a reasonable possibility of an effective reorganization. Bankruptcy courts generally hold that the reference to an "effective" reorganization in 11 U.S.C. § 362(d)(2)(B) requires that relief from stay be granted if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations. *In re 6200 Ridge, Inc*., 69 B.R. 837, 843 (Bankr.E.D.Pa. 1987)(citing numerous cases); *see also* 3 Collier on Bankruptcy § 362.07[4][b] at 362-101. Similarly, "[t]he 'effective reorganization' requirement enunciated by the Supreme Court ... require[s] a showing by a debtor ... that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed." *In re Sun Valley Newspapers, Inc*., 171 B.R. 71, 75 (9th Cir. B.A.P. 1994). With that standard in mind, courts usually require the debtor to do more than manifest unsubstantiated hopes for a successful reorganization. *Id*. Finally, "[r]egardless of the amount of time a case has been pending, if the evidence indicates that a successful reorganization within a reasonable time is impossible, the court *must* grant relief from the stay." *Id.* (emphasis added).

Here, the Debtor has not filed a disclosure statement or plan despite being a Chapter 11 Debtor since August 2016. The Debtor is delinquent in its monthly operating reports. The Debtor has been able to reach a cash collateral agreement, but has not

- 8 -

otherwise explained how it intends to reorganize. The Debtor's Status Report, filed on October 3, 2016, at docket entry no. 38, stated that the Debtor is discussing a sale of its business as a going concern, but months have gone by since that date and there has been no Sale Motion filed or any other indication of a pending sale.

As stated in *Timbers* and *In re Sun Valley Newspapers*, the Debtor must establish more than the mere possibility of reorganization; the Debtor must demonstrate that there is a reasonable possibility of a successful reorganization within a reasonable time. The Debtor has failed to demonstrate this. The Debtor has not indicated that is has any timeline concerning the pending sale. Additionally, it has not disclosed any details or terms of the pending sale. The Debtor has failed to demonstrate a reasonable possibility of reorganization.

### 3. There is No Effective Reorganization in Sight for Which the Debtor Must Use TREIF's Collateral.

Because the Debtor has not shown a reasonable possibility of an effective reorganization, the Cutting Machine is not necessary for the reorganization that the Debtor does not even have in prospect. It is appropriate to grant TREIF relief from stay under Section 362(d)(2).

### 4. In the Event the Court Denies Relief from Stay, the Debtor's Possession of the Cutting Machine Must be Conditioned on Post Petition Payments.

The Debtor has made no payments to TREIF since May 2016. In the meantime, the value of the Cutting Machine is depreciating over time due to the Debtor's continued use. TREIF must be compensated for this decline in value in the event the Court decides not to grant relief from stay. 11 U.S.C. § 361(1).

- 9 -

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR RELIEF FROM STAY

4847-0234-3236

**C.** **In the Unlikely Event the Court Deems the Sale Agreement a Lease, the Debtor's Continued Possession of the Cutting Machine Must be Conditioned on Payments under 11 U.S.C. Section 365.**

The Debtor did not list any agreement concerning the Cutting Machine on its Schedule G of leases and executory contracts. Even though the Sale Agreement is not a lease, in the unlikely event the Court deems it a lease, the Debtor must make payments under Sections 365(b)(1)(A)-(C) to cure its default under the Sale Agreement and to provide adequate assurance of future performance under the Sale Agreement.

**III.    CONCLUSION**

For the foregoing reasons, TREIF requests that the Court grant it relief from stay under 11 U.S.C. Sections 362(d)(1) and 362(d)(2). In the event the Court interprets the Sale Agreement as a lease, TREIF requests that the Court order the Debtor to make post-petition rent payments to TREIF under 11 U.S.C. Section 365. Finally, TREIF respectfully requests such other and additional relief as the Court deems just and proper.

Dated:  March 27, 2017                                        SNELL & WILMER L.L.P.


                                                              By: /s/ Michael B. Reynolds
                                                              Michael B. Reynolds
                                                              Attorneys for TREIF USA Inc.

4847-0234-3236